IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 06-cv-00857-WDM-CBS

RONN STERLING,
    Plaintiff,
v.

FEDERAL BUREAU OF PRISONS, and
RON WILEY, Warden,
    Defendants.
_____

RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

Magistrate Judge Craig B. Shaffer

    This civil action comes before the court on "Defendants' Motion to Dismiss" (filed October 10, 2006) (doc. # 24). Pursuant to the Order of Reference dated June 26, 2006 (doc. # 9) and the memorandum dated October 11, 2006 (doc. # 25), this matter was referred to the Magistrate Judge. The court has reviewed the Motion, Mr. Sterling's Response (filed January 25, 2007) (doc. # 35), the pleadings, the entire case file, and the applicable law and is sufficiently advised in the premises.

I.    Statement of the Case

    Mr. Sterling is a prisoner currently incarcerated at the United States Penitentiary in Florence, Colorado (USP-Florence). Proceeding *pro se*, Mr. Sterling brought this action pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). (*See* Complaint (doc. # 3) at p. 3). Mr. Sterling alleges that after June 2005, prisoners in administrative detention in the Special Housing Unit ("SHU") at USP-Florence were no longer permitted to have radios. (*See* Complaint (doc. # 3) at pp. 3-5; *see also* docs. # 28 and # 26 (incorporating amendment described in Mr. Sterling's Motion for Leave to Amend Complaint)). Mr. Sterling alleges that the denial of radios to inmates in the SHU violates 28 C.F.R. § 541.22 and his due process and equal protection rights pursuant to

the Fifth Amendment of the U.S. Constitution.  (*See* Complaint (doc. # 3) at pp. 3-5).  As relief, Mr. Sterling seeks "declaratory, injunctive, mandamus, and monetary relief" and punitive damages.  (*See* Complaint (doc. # 3) at p. 8; doc. # 26 at p. 2).  Defendants have moved to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction as against Defendant Federal Bureau of Prisons ("BOP") and Defendant Wiley and pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

II.     Standard of Review

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a motion to dismiss may be granted if the court does not have subject matter jurisdiction over the matter.  In addressing a jurisdictional challenge, the court need not presume all of the allegations contained in the amended complaint to be true, "but has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts. . . ."  *United States v. Rodriguez Aguirre*, 264 F.3d 1195, 1204 (10th Cir. 2001) (citation omitted).

Rule 12(b)(6) states that a court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  When reviewing a Rule 12(b)(6) motion to dismiss, the court accepts the well-pleaded allegations of the complaint as true and construes them in the light most favorable to the plaintiff.  *Ramirez v. Dept. of Corrections*, 222 F.3d 1238, 1240 (10th Cir. 2000) (citation omitted).  A complaint should not be dismissed under Rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Ramirez*, 222 F.3d at 1240 (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

*Pro se* pleadings are to be construed liberally.  *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (holding allegations of a pro se complaint "to less stringent standards than

formal pleadings drafted by lawyers"); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) ("[a] pro se litigant's pleadings are to be construed liberally") (citations omitted). However, a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall*, 935 F. 2d at 1110. A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983). *See also Whitney v. State of New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues").

III.   Analysis

A.   *Bivens* Claims and Sovereign Immunity

In *Bivens*, 403 U.S. at 388, the Supreme Court recognized "an implied private right of action for damages against federal officers alleged to have violated a citizen's constitutional rights." *Correctional Services Corporation v. Malesko*, 534 U.S. 61, 66 (2001). "To establish a *Bivens* cause of action, a party must have some evidence to support finding that [a] federal agent acting under color of such authority violated some cognizable constitutional right of plaintiff." *Hron v. Jenkins*, 15 F. Supp. 2d 1082, 1085 (D. Kan. 1998) (citing *Bivens,* 403 U.S. at 388).

"If a federal prisoner in a BOP facility alleges a constitutional deprivation, he may bring a *Bivens* claim against the offending individual officer, subject to the defense of qualified immunity." *Malesko*, 534 U.S. at 72. "The prisoner may not bring a *Bivens* claim against the officer's employer, the United States, or the BOP." *Malesko*, 534 U.S. at 72.

*See also Simmat v. U.S. Bureau of Prisons* 413 F.3d 1225, 1231 (10th Cir. 2005) ("a *Bivens* claim lies against the federal official in his individual capacity – not . . . against officials in their official capacity"); *Hatten v. White*, 275 F.3d 1208, 1210 (10th Cir. 2002) (doctrine of sovereign immunity precludes a *Bivens* action against the United States or any agency thereof); *Weaver v. United States*, 98 F.3d 518, 520 (10th Cir. 1996) (claim for damages against a federal defendant in his official capacity is treated as a claim against the United States).

Mr. Sterling's claims pursuant to *Bivens* against the Federal Bureau of Prisons and Defendant Ron Wiley in his official capacity are barred by sovereign immunity and are thus properly dismissed with prejudice for lack of subject matter jurisdiction.

B.     Failure to State a *Bivens* Claim Against Defendant Wiley in his Individual Capacity

Defendants argue that for several reasons Mr. Sterling has failed to state a claim for relief under *Bivens* against Defendant Wiley in his individual capacity.

1.     Due Process

The Fifth Amendment provides that no individual may "be deprived of life, liberty, or property without due process of law." U.S. Const. art. V.  The Due Process Clause of the Fifth Amendment protects against due process violations by the federal government. *See Public Utilities Comm'n v. Polak*, 343 U.S. 451, 461 (1952) (Fifth Amendment applies to and restricts only the Federal Government and not private persons).  In order to succeed under a Fifth Amendment due process claim, a plaintiff must show a cognizable property or liberty interest. *Weatherford v. Dole*, 763 F.2d 392, 393 (10th Cir. 1985)  *See also Anglemyer v. Hamilton County Hosp.*, 58 F.3d 533, 536 (10th Cir. 1995) (due process guarantees of the Fifth and Fourteenth Amendments apply only when a constitutionally protected liberty or property interest is at stake) (citation omitted).

Mr. Sterling alleges that commencing in June 2005 Defendant Wiley instituted a new policy that SHU inmates were no longer permitted to have radios. (Complaint at pp. 4-5). Mr. Sterling does not base his claim on a property interest in the radio. Rather, he alleges that the policy change regarding radios in the SHU constituted a deprivation of a liberty interest that is protected by the Due Process Clause. (See Mr. Sterling's Response (doc. # 35) at pp. 4, 5, 7).

In *Sandin v. Connor*, the Supreme Court held that an inmate's liberty interest is protected under the Due Process Clause if the restraints or conditions imposed "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." 515 U.S. 472, 484 (1995). "The Supreme Court mandate since *Sandin* is that henceforth we are to review property and liberty interest claims arising from prison conditions by asking whether the prison condition complained of presents the type of atypical, significant deprivation in which a State might conceivably create a liberty [or property] interest." *Cosco v. Uphoff*, 195 F.3d 1221, 1224 (10th Cir. 1999) (internal quotation marks and citation omitted). "[T]he touchstone of the inquiry . . . is not the language of regulations regarding those conditions but the nature of those conditions themselves in relation to the ordinary incidents of prison life." *Wilkinson v. Austin*, 545 U.S. 209, 223 (2005) (internal quotation marks and citation omitted).

a.      Title 28 C.F.R. § 541.22

Mr. Sterling first rests his claim on 28 C.F.R. § 541.22. "Administrative detention is the status of confinement of an inmate in a special housing unit in a cell either by self or with other inmates which serves to remove the inmate from the general population." 28 C.F.R. § 541.22. Section 541.22(d) addresses "[c]onditions of administrative detention:"

> The basic level of conditions as described in § 541.21(c) for disciplinary segregation also apply to administrative detention. If consistent with available resources and the security needs of the unit, the Warden shall give an inmate housed in administrative detention the same general privileges

> given to inmates in the general population. This includes, but is not limited to, providing an inmate with the opportunity for participation in an education program, library services, social services, counseling, religious guidance and recreation. Unless there are compelling reasons to the contrary, institutions shall provide commissary privileges and reasonable amounts of personal property. An inmate in administrative detention shall be permitted to have a radio, provided that the radio is equipped with ear plugs. Exercise periods, at a minimum, will meet the level established for disciplinary segregation and will exceed this level where resources are available. The Warden shall give an inmate in administrative detention visiting, telephone, and correspondence privileges in accordance with part 540 of this chapter. The Warden may restrict for reasons of security, fire safety, or housekeeping the amount of personal property that an inmate may retain while in administrative detention.

The Tenth Circuit Court of Appeals "has consistently held, albeit by unpublished opinion, that § 541.22 creates no liberty interest under either pre- or post-*Sandin* principles . . . ." *Jordan v. Federal Bureau of Prisons*, 191 Fed. Appx. 639, 656 (10th Cir. (Colo.) July 25, 2006).[1] *See also Malik v. Kindt*, 76 F.3d 393 at * 2 (10th Cir. (Okla.) Feb. 2, 1996) ("a *Bivens* action must be founded upon a violation of constitutional rights and a failure to adhere to administrative regulations does not equate to a constitutional violation") (internal quotation marks and citations omitted) (Table).[2] To the extent that Mr. Sterling's Complaint is based on 28 C.F.R. § 541.22, it is properly dismissed with prejudice.


      b.      Atypical and Significant Hardship

Mr. Sterling also alleges that the policy prohibiting radios in SHU means he is confined under conditions markedly different from other prisoners in the SHU or the General Population. (Complaint at p. 4). Whether confinement "conditions impose such an atypical and significant hardship that a liberty interest exists is a legal determination. . . ." *Beverati v. Smith*, 120 F.3d 500, 503 (4th Cir. 1997) (citing *Sandin v. Connor*, 515 U.S.

---

[1] Mr. Sterling has a copy of this unpublished case. (*See* attachment to Motion to Dismiss (doc. # 24-2) and attachment to Mr. Sterling's Response (doc. #35-2)).

[2] Mr. Sterling has a copy of this unpublished case. *(See* attachment to Motion to Dismiss (doc. # 24-4)).

at 485-87).

Left unresolved in *Sandin* was the question whether a plaintiff must allege that his conditions of confinement constitute "atypical and significant hardship" compared to prisoners in the general population or other prisoners in administrative detention. *Compare Gaines v. Stenseng*, 292 F.3d 1222, 1224 (10th Cir. 2002) (evaluating conditions in the same type of segregation, whether administrative or protective custody) and *Wagner v. Hanks*, 128 F.3d 1173, 1174-76 (7th Cir. 1997) (holding that the proper comparison under *Sandin* is between a plaintiff-inmate's conditions of confinement and conditions of confinement in that state's most secure facility) with *Penrod v. Zavaras*, 94 F.3d 1399, 1407 (10th Cir. 1996) (suggesting an appropriate baseline is the conditions of the general prison population) and *Roucchio v. Coughlin*, 923 F .Supp. 360, 372 (E.D.N.Y. 1996) (trial court should consider to what extent the conditions of confinement depart from circumstances faced by inmates in the general population). The Tenth Circuit Court of Appeals has indicated that "any assessment must be mindful of the primary management role of prison officials who should be free from second-guessing or micro-management from the federal courts." *Estate of DiMarco v. Wyoming Department of Corrections*, 473 F.3d 1334, 1342 (10th Cir. 2007) (citation omitted). One of the factors for the court to consider is "whether the conditions of placement are extreme." *DiMarco*, 473 F.3d at 1342.

The only "atypical" or "significant" condition that Mr. Sterling alleges is the denial of radios to inmates in the SHU. The court concludes that the denial of radios to inmates in the SHU does not implicate a liberty interest that is protected by the Due Process Clause. Mr. Sterling has not alleged denial of access to any "basic essentials of life" other than the denial of radios. *See DiMarco*, 473 F.3d at 1343 (inmate had access to the basic essentials of life, although her access to certain amenities was more limited than the general population). As a matter of law, the denial of radios in the SHU does not create an "atypical and significant hardship" triggering due process protections. *See DiMarco*,

473 F.3d at 1343  (denial of "interaction with other inmates, and certain amenities such as nail clippers and mirrors in her cell" did not amount to conditions of confinement  atypical of protective custody); *Fiorentino v. Biershbach*, 64 Fed. Appx. 550, 552 (7th Cir. (Ill.) April 9, 2003) (segregated confinement "to a cell nearly 24 hours a day" and deprivation "of various rights and privileges enjoyed by the general prison population such as smoking, watching TV, listening to the radio, using the telephone, accessing the law library, and participating in recreational and religious programs. . . did not constitute an atypical, significant deprivation that would create a liberty interest protected by due process"); *Blum v. Federal Bureau of Prisons*, 189 F.3d 477 at * 3 (10th Cir. (Colo.) Aug. 23, 1999) (disciplinary segregation that left inmate "without store privileges, radio, phone calls, etc. that other inmates just being held in segregation had the privileges of" was "not different in such degree and duration as compared with the ordinary incidents of prison life to be a protected liberty interest under the Due Process Clause") (internal quotation marks citations omitted); *McCoy v. Denning*, 2006 WL 1360121 at * 4 (D. Kan. May 17, 2006) (segregation where inmate allowed only "one visiting day, one hour of recreation, restricted commissary, no t.v., no radio, and other privileges that are restricted" did not allege conditions significantly more restrictive or atypical than "to be normally expected by one serving a jail term") (internal quotation marks and citation omitted).[3]  "The prison has no constitutional duty to equalize these type of amenities in every detail. Nor does a prisoner have a right to access every type of program available to other inmates, ranging from work to recreation." *DiMarco*, 473 F.3d at 1343.

The court concludes that Mr. Sterling has not alleged a condition that is sufficiently "atypical" or "significant . . . in relation to the ordinary incidents of prison life" to implicate a liberty interest.  Mr. Sterling having failed to allege the violation of a protected liberty

---

[3]    Copies of these unpublished cases are attached to this Recommendation.

interest, his Claim One for violation of his due process rights pursuant to the Fifth Amendment is properly dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

### 2. Equal Protection

Mr. Sterling alleges that the policy prohibiting radios for inmates in the SHU violates his right to equal protection. (Complaint at p. 5).

"[T]he Due Process Clause of the Fifth Amendment contains an equal protection component prohibiting the United States from invidiously discriminating between individuals or groups." *Washington v. Davis*, 426 U.S. 229, 239 (1976). *See also United States v. McHorse*, 179 F.3d 889, 897 n.1 (10th Cir. 1999) ("While the Fifth Amendment contains no equal protection clause, the equal protection standards of the Fourteenth Amendment are incorporated into the Fifth Amendment's promise of due process") (citation omitted). "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). The challenged disparate treatment must be the result of purposeful discrimination. *Harris v. McRae*, 448 U.S. 297, 323 n. 26 (1980).

To properly allege an equal protection claim, Mr. Sterling must plead sufficient facts to "demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002). Mr. Sterling has alleged that inmates in the SHU are treated differently with regard to possession of radios than inmates in the General Population Unit. (*See* Complaint at p. 5). For purposes of this motion to dismiss, the court accepts as true Mr. Sterling's allegation that conditions of

confinement are identical for SHU inmates and General Population Unit inmates.  (*See* Complaint at p. 5).

First, Mr. Sterling has not alleged that Defendants acted based upon a discriminatory intent or motive.  *See Watson v. City of Kansas City, Kansas*, 857 F.2d 690, 694 (10th Cir. 1996) ("A plaintiff in an equal protection action has the burden of demonstrating discriminatory intent") (citations omitted);  *Villanueva v. Carere*, 85 F.3d, 481, 485 (10th Cir. 1996) (Although "[t]he discriminatory purpose need not be the only purpose, . . . it must be a motivating factor in the decision").

Second, even if Mr. Sterling properly alleged disparate treatment based upon intentional discrimination, the Complaint must also set forth facts demonstrating the disparate treatment lacks justification under the requisite degree of scrutiny.  *Veney*, 293 F.3d at 731.  Mr. Sterling does not allege that he experienced different conditions than other similarly situated inmates in the SHU.  In fact, he alleges that all inmates in the SHU were prohibited from having radios.  Mr. Sterling has not alleged that he is a member of a constitutionally protected class or that he has been denied a fundamental right, so the Defendants' action in prohibiting radios for SHU inmates need only bear a rational relation to a legitimate state purpose.  *See Vacco v. Quill*, 521 U.S. 793, 799 (1997) (the Equal Protection Clause permits classifications and distinctions which neither burden fundamental rights nor target a suspect class, provided that such classification or distinction bears a rational relation to some legitimate end).

> When equal protection challenges arise in a prison context, however, courts must adjust the level of scrutiny to ensure that prison officials are afforded the necessary discretion to operate their facilities in a safe and secure manner. In a prison context, therefore, we must determine whether the disparate treatment is "reasonably related to [any] legitimate penological interests" . . . Accordingly, to state a claim upon which relief may be granted, [plaintiff] must allege facts sufficient to overcome the presumption of reasonableness applied to prison policies.

*Veney*, 293 F.3d at 732.  *See also Heller v. Doe ex rel. Doe*, 509 U.S. 312, 319-20 (1993) ("a classification neither involving fundamental rights nor proceeding along suspect lines

... cannot run afoul of the Equal Protection Clause if there is a rational relationship between disparity of treatment and some legitimate governmental purpose") (citations omitted); *Jones v. North Carolina Prisoners' Union, Inc.*, 433 U.S. 119, 134 (1977) (holding that prison administrators "need only demonstrate a rational basis for their distinctions" when classifying inmates); *Shifrin v. Fields*, 39 F.3d 1112, 1114 (10th Cir. 1994) (to "withstand equal protection review," the challenged classification "must bear only a rational relationship to a legitimate" penological concern).

A prison control units such as the SHU is recognized as "an internal disciplinary mechanism." *See United States v. Johnson*, 223 F.3d 665, 673 (7th Cir. 2000). Because the classification of prisoners based upon their situs of incarceration does not employ a suspect class or burden a fundamental right, it "is accorded a strong presumption of validity." *Heller*, 509 U.S. at 319. The Complaint fails to allege facts sufficient to overcome the presumption of reasonableness applied to prison policies. *Veney*, 293 F.3d at 732. Accordingly, Mr. Sterling's Claim Two is properly dismissed.

### 3. Qualified Immunity

Defendant Wiley further argues that he is entitled to qualified immunity from Mr. Sterling's claims. The Supreme Court has recognized a qualified immunity defense for *Bivens* claims against federal officials. *Johnson v. Fankell*, 520 U.S. 911, 914 (1997).

> Under the doctrine of qualified immunity, government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. When a defendant raises a claim of qualified immunity, the burden shifts to the plaintiff to show that the defendant is not entitled to immunity. To overcome a qualified immunity defense, a plaintiff must first assert a violation of a constitutional or statutory right and then show that the right was clearly established.

*Robbins v. Wilkie*, 433 F.3d 755, 764 (10th Cir. 2006) (internal quotation marks and citations omitted). *See also Wilson v. Layne*, 526 U.S. 603, 609 (1999) ("A court

evaluating a claim of qualified immunity must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation.") (internal quotation marks and citation omitted); *Currier v. Doran*, 242 F.3d 905, 917 (10th Cir. 2001) ("Once a defendant raises the defense of qualified immunity in the context of a motion to dismiss, a court must first determine whether the plaintiff has asserted a violation of federal law.") (citation omitted).

Because, as discussed *supra.*, Mr. Sterling has failed to allege sufficient facts showing that Defendants violated a clearly established federal statutory or constitutional right, Defendant Wiley is entitled to qualified immunity from Mr. Sterling's claims.

    4.    Mr. Sterling's Request for Mandamus

Defendants also move to dismiss Mr. Sterling's request for relief in the form of mandamus. (*See* Complaint (doc. # 3) at p. 8; Motion to Dismiss (doc. # 24) at pp. 7-9).

The mandamus statute provides that "[t]he district court shall have jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. "A writ of mandamus is an extraordinary remedy to be utilized only under exceptional circumstances." *West v. Spellings* ___ F. Supp. 2d ___, 2007 WL 936661 * 4 (D.D.C. March 29, 2007) (citations omitted).

> In order to obtain mandamus relief, a plaintiff must show that (1) he has a clear right to relief; (2) the defendant has a clear duty to act; and (3) there is no other adequate remedy available to the plaintiff. A plaintiff bears a heavy burden of showing that his right to a writ of mandamus is clear and indisputable. In the absence of a clear and certain duty to act by the public official, there can be no mandamus relief. Determining if a defendant has a clear duty to act depends on the nature of the duty at issue, whether it is ministerial or discretionary. Mandamus is only available where the duty to be performed is ministerial and the obligation to act peremptory and clearly defined. A ministerial duty is one that admits of no discretion, so that the official has no authority to determine whether to perform the duty. Courts do not have authority under the mandamus statute to order a government

official to perform a discretionary duty.

*West v. Spellings*, 2007 WL 936661 at * 4 (internal quotation marks and citations omitted)

Mr. Sterling bases his request for mandamus relief on 28 C.F.R. § 541.22. (*See* Mr. Sterling's Response (doc. # 35) at pp. 6-7). The BOP, as administrator of the prison system, is invested with a great deal of discretion regarding institutional operations." *Muhammad v. United States Bureau of Prisons*, 789 F. Supp. 449, 450 (D.D.C. 1992) (citations omitted). Section 541.22 does not require the BOP to provide radios to inmates. While § 541.22(d) states that "[a]n inmate in administrative detention shall be permitted to have a radio, provided that the radio is equipped with ear plugs," this provision is qualified as "[u]nless there are compelling reasons to the contrary" and to the extent that it is "consistent with available resources and the security needs of the unit." 28 C.F.R. § 541.22(d). Because the provision of radios is a matter of discretion, Mr. Sterling cannot show that the BOP had a clear duty to act. *See Marquez-Ramos v. Reno*, 69 F.3d 477, 479 (10th Cir. 1995) ("The importance of the term 'nondiscretionary' cannot be overstated – the judiciary cannot infringe on decision-making left to the Executive branch's prerogative") (citations omitted). Thus, Mr. Sterling is not entitled to mandamus relief.

5.   The Administrative Procedures Act

While Mr. Sterling has not made a claim pursuant to the Administrative Procedures Act ("APA"), Defendants argue that he fails to state a claim under the APA.

The APA provides that "[t]he reviewing court shall -- (1) compel agency action unlawfully withheld or unreasonably delayed," 5 U.S.C. § 706; and "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof," 5 U.S.C. § 702. When a petitioner seeks both mandamus relief and relief under the APA, courts apply the same principles and standards both to determine jurisdiction and to assess the

merits. *See Hernandez-Avalos v. INS*, 50 F.3d 842, 844 (10th Cir. 1995) ("[a] mandatory injunction [issued under the APA] . . . is essentially in the nature of mandamus") (internal quotation marks and citation omitted). Thus, to the extent that Defendants perceive that Mr. Sterling is asserting an APA claim, it would fail for the same reason his request for mandamus fails: he does not have a clear right to relief. Further, there is no right to judicial review if the agency action has been committed to agency discretion by law. *See Heckler v. Chaney*, 470 U.S. 821, 828 (1985) ("before any review at all may be had, a party must first clear the hurdle of § 701(a)").

Accordingly,

IT IS RECOMMENDED that "Defendants' Motion to Dismiss" (filed October 10, 2006) (doc. # 24) be GRANTED and that this civil action be dismissed with prejudice.

**Advisement to the Parties**

Within ten days after service of a copy of the Recommendation, any party may serve and file written objections to the magistrate judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).

The district judge shall make a *de novo* determination of those specific portions of the proposed findings or recommendations to which specific objection is made. 28 U.S.C. § 636(b)(1). A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review. *See In re Griego*, 64 F.3d at 583; *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). The district judge may

accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  28 U.S.C. § 636(b)(1).

"[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review."  *One Parcel of Real Property*, 73 F.3d at 1060.  Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (district court's decision to review a magistrate's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Property*, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate's order, cross-claimant had waived its right to appeal those portions of the ruling);  *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate's ruling).  *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

DATED at Denver, Colorado, this 25th day of May, 2007.

BY THE COURT:

    s/Craig B. Shaffer
United States Magistrate Judge